UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
JEFF S. ROTH,

                          Plaintiff,                     **REPORT AND**
                                                          **RECOMMENDATION**
                                                            23-CV-2862 (RPK) (ARL)

          -against-

WESTBURY MEMORIAL PUBLIC LIBRARY,

                          Defendant.
-------------------------------------------------------------------X
**LINDSAY, Magistrate Judge:**

     Plaintiff Jeff S. Roth ("Plaintiff") bring this action against the Westbury Memorial Public

Library ("Defendant"), alleging violations of the Age Discrimination in Employment Act

("ADEA"), as codified, 29 U.S.C. §§ 621 to 634, Title VII of the Civil Rights Act ("Title VII"),

42 U.S.C. § 2000e, et seq., and the Americans with Disabilities Act ("ADA"), as codified, 42

U.S.C. §§ 12112 to 12117.  Before the Court, on referral from District Judge Kovner, is

Defendant's motion to dismiss.  For the reasons set forth below, the undersigned respectfully

recommends the motion be granted.

## BACKGROUND

### A. Factual Background

     The following facts are drawn from the Complaint and are accepted as true for purposes

of the instant motion.  *Samuels v. Air Transp. Local 504*, 992 F.2d 12, 15 (2d Cir. 1993).  These

facts, however, do not constitute findings of fact by the Court.  *See Colvin v. State University*

*College at Farmingdale*, No. 13-CV-3595 (SJF)(ARL), 2014 U.S. Dist. LEXIS 85678, 2014 WL

2864224, at *1 n.1 (E.D.N.Y. June 19, 2014).

Plaintiff was employed by Defendant from August 2021 until February 2022 as an Information Technology Aide.  Amended Complaint, ECF No. 19, p.4.[1]  Plaintiff was born in 1971, making him 50 years old when he was hired by Defendant in August 2021.  *Id.* at p. 4.  According to Plaintiff, he was terminated on February 4, 2023 [sic] for "alleged unsatisfactory probation on the 25 week of [his] employment which [was] one week before my probation was completed and I would be protected with arbitration rights."[2]  *Id.*  p.p.4, 5.  Plaintiff alleges that from the start of his employment there was a "clique" of co-workers who did not want him to be hired.  *Id.*  According to Plaintiff, this clique believed that one of their members, Christopher Grant ("Grant"), could not be promoted to a full-time position as an Information Technology Aide until Plaintiff was either promoted or terminated.  *Id.* at p.5.

Plaintiff contends that he has provided evidence of discriminatory treatment by demonstrating that an unnamed Information Technology Aide had the ability to "load" money onto Westbury Memorial Library cards which could be used in all Nassau County Libraries.  *Id.* at p.6.  Additionally, Plaintiff contends that further evidence of discrimination is shown by Defendant's statements to the NYSDOL indicating that he should be denied unemployment benefits because he resigned his position and was not terminated. *Id.* at p.7.   Plaintiff further contends that Defendant "should be held accountable for their discriminatory treatment creating a hostile work environment which was detailed with the original 134 pages of the DOHR complaint. The fact alone that my co-workers had no concern over my safety while I was having

---

[1] Plaintiff's Amended Complaint does not contain page numbers or paragraphs.  Accordingly, throughout this report and recommendation references to the Amended Complaint shall cite to the ECF page number.
[2] Later in the Amended Complaint Plaintiff refers to the termination letter as the February 4, 2022 termination letter, *see id.* at p.6, which the Court believes to be the correct date.

the medical episode, chose not to check and see if I was okay or needed an ambulance to be called is disgusting." *Id.*

In the response referenced by Plaintiff, filed with the New York Commission on Human Rights on July 7, 2022 and attached to the Amended Complaint, Plaintiff details interactions with various co-workers which he claims support his claim of discrimination. *See generally*, ECF Nos. 19-1, 19-2, 19-3. Plaintiff states that he was given a "condescending attitude" about coming in late, ECF No. 19-1, p.13, that he was justified in calling two hours into his shift to say he could not make it to work, and failing to come in the following day, *id.* at p. 13-14, that the complaints of his vocal opposition to established procedures were misleading, *id.* at p. 16, that vehicles in the library parking lot attempted to block his way, *id.* at p. 23, that the oil filter in his car was tampered with, *id.* at p. 23, and that his co-workers portrayed him as a health risk for not wearing his mask properly, ECF No. 19-2, p.4. Plaintiff also argues that rather than sleeping on the job as suggest by Defendant, Plaintiff was actually sitting with his feet up in an attempt to "get [his] heart back into rhythm" because he had suffered an anxiety attack on the job. *Id.* at p. 5. Plaintiff also alleges that "[c]omments were made by co-workers that since I was older, I was not up to date on the technology even though was qualified and on titles above the IT Aide position. These titles include IT Specialist 1, 2, & 3, along with Technology Project Manager. At one point I had to explain . . . my education and work-related experience when derogatory remarks were made." ECF 19-2, p. 46.

In an effort to support his claim for disability discrimination, Plaintiff posits that "I have a disability and it was speculated once disclosed that any absence from the past mentioned in their counseling memo and any in the future then could be determined as a 'Mental Health Day' and there would be nothing the library could do to use that against me. It was also

3

speculated that I would be and could in the future at any time then take a 'Medical Leave of Absence.' For this reason, it finalized [Defendant's] decision to move forward with terminating me before my probation was completed knowing that litigation was going to occur even if they allowed me to remain employed." *Id*. at p. 49.  One of the exhibits Plaintiff provided in the response attached to the Amended Complaint is a letter from Susan Nifenecker dated August 18, 2021 indicating that Plaintiff was receiving psychiatric services from the Charles Evans Center and that his diagnosis was post-traumatic stress disorder and panic disorder with agoraphobia. ECF 19-1, p. 49.  However, Plaintiff acknowledges this letter was not provided to his employer until December 2022.  ECF No. 19-2, p. 4-5, p. 7, p. 13.  Plaintiff also claims that "[o]nce my medical episode was disclosed, I overheard co-workers comparing me as a possible Mr. Waters who was the banned Vietnam Veteran and had 'mental issues' where he would harass the employee's and patrons. Then other problem patron Erving who threatened the security guard, dropped his medication bottle, then eventually banned comments were overheard referencing me and medication. Some co-workers were speculating what would occur if at any moment I would take a 'Medical Leave' and the fact that technically I am a person with a disability which is a protected class."  ECF No. 19-3, p. 34.

In addition, Plaintiff alleges that "two weeks after I was let go within the board minutes the library hired Grant under the IT Aid 2 title at a higher salary. The library terminated me and hired the younger technician whom they had been working with for years this is a form of favoritism. They hired him at a higher title and higher salary than they were paying me." *Id*. at p. 47.  Plaintiff, however, acknowledges that Grant had recently received his degree in electrical engineering and had worked at the Library for several years. *Id*.

Plaintiff contends he was discriminated against based on age, "[d]isability or perceived disability of P.T.S.D.", race, and color.  These acts of discrimination, according to Plaintiff, resulted in "(1) Termination of Employment; (2) Retaliation; (3) Failure to promote; [and] (4) Other acts specified in the detailed complaint to the NYSDOR." *Id*.  In the Amended Complaint Plaintiff claims Defendant created a hostile work environment through "their discriminatory treatment," Am. Compl., p.7, and that Defendant's acts of discrimination resulted in retaliation. *Id*. at p. 3.  Liberally construing Plaintiff's allegations as required the Court will evaluate these claims.

### B.  Procedural Background

*Pro se* Plaintiff filed the original complaint in this action on April 10, 2023 and effectuated service on August 25, 2023.  ECF No. 8.  On July 26, 2023, the Court issued the following Order:

> Plaintiff sought to submit a "digital disk" containing several exhibits along with his complaint.  *See* Compl. ¶ III.E.10.  As part of its security policies, the Court does not accept digital media for filing; the disk has accordingly been returned to plaintiff.  Should plaintiff wish to have these exhibits considered along with his complaint, he should file an amended complaint and attach the exhibits in the same format as the amended complaint.

July 26, 2023 Order.  Plaintiff did not refile the Complaint attaching the exhibits contained on the disk.

On September 15, 2023, Defendant filed a motion to dismiss the complaint, arguing that Plaintiff failed to exhaust his administrative remedies as to his race and color discrimination claim and Plaintiff failed to state a discrimination claim, retaliation claim, or a hostile work environment claim.  ECF No. 11.  After a series of extension requests and a renewed motion for the appointment of counsel, on December 8, 2023, Plaintiff filed an Amended Complaint rather

than a response to the motion to dismiss. ECF No. 19. On December 9, 2023, Plaintiff filed a

third request for the appointment of counsel, which was again denied. ECF No. 21.

On December 22, 2023, Defendant moved to dismiss the Amended Complaint, arguing

that the amendment was improper and renewing its arguments that Plaintiff had failed to exhaust

his administrative remedies, failed to state a claim and is barred by the election of remedies

doctrine. Plaintiff failed to respond to the motion to dismiss in a timely manner and Judge

Kovner directed Plaintiff to respond to the motion to dismiss by January 25, 2024. Plaintiff

failed to respond. By Order dated February 9, 2024, Judge Kovner referred Defendant's motion

to undersigned.

## DISCUSSION

### A. Standard of Review

#### 1. Motion to Dismiss - Rule 12(b)(6)

The Supreme Court clarified the appropriate pleading standard in *Ashcroft v. Iqbal*, 556

U.S. 662 (2009), in which the court set forth a two-pronged approach to be utilized in analyzing

a motion to dismiss. District courts are to first "identify [ ] pleadings that, because they are no

more than conclusions, are not entitled to the assumption of truth." *Id.* at 679. Though "legal

conclusions can provide the framework of a complaint, they must be supported by factual

allegations." *Id.* Second, if a complaint contains "well-pleaded factual allegations, a court

should assume their veracity and then determine whether they plausibly give rise to an

entitlement to relief." *Id.* "A claim has facial plausibility when the plaintiff pleads factual

content that allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it

asks for more than a sheer possibility that a [d]efendant has acted unlawfully." *Id.* at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556-57 (2007) (internal citations omitted)).

Plaintiff did not respond to the motion, however, on a motion to dismiss no response is necessary and the Court will apply the appropriate legal standard and determine whether Plaintiff's Amended Complaint states a claim upon which relief could be granted. *See McCall v. Pataki*, 232 F.3d 321, 323 (2d Cir. 2000) (explaining that, "[i]f a complaint is sufficient to state a claim on which relief can be granted, the plaintiff's failure to respond to a Rule 12(b)(6) motion does not warrant dismissal"); *see also Goldberg v. Danaher*, 599 F.3d 181, 184 (2d Cir. 2010) (requiring the court to evaluate claims asserted in the complaint despite the lack of opposition).

Moreover, Plaintiff is proceeding *pro se* and his submissions should be held "'to less stringent standards than formal pleadings drafted by lawyers.'" *Hughes v. Rowe*, 449 U.S. 5, 9, 101 S. Ct. 173, 176, 66 L. Ed. 2d 163 (1980) (per curiam) (quoting *Haines v. Kerner*, 404 U.S. 519, 520, 92 S. Ct. 594, 595, 30 L. Ed. 2d 652 (1972)); *see also Ferran v. Town of Nassau*, 11 F.3d 21, 22 (2d Cir. 1993). The Court should "read the pleadings of a pro se plaintiff liberally and interpret them 'to raise the strongest arguments that they suggest.'" *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)). Nevertheless, Plaintiff's *pro se* status "'does not exempt a party from compliance with relevant rules of procedural and substantive law.'" *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983) (citation omitted).

Finally, for the purposes of a Rule 12(b) motion, "a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated by reference, and to matters of which judicial notice may be taken." *Serdarevic v. Centex Homes, LLC,* 760 F. Supp. 2d 322, 328 (S.D.N.Y. 2010) (quotation

omitted); *see Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002). In addition, "in some cases, a document not expressly incorporated by reference in the complaint is nevertheless 'integral' to the complaint and, accordingly, a fair object of consideration on a motion to dismiss." *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016). "A document is integral to the complaint 'where the complaint relies heavily upon its terms and effect.'" *Id.* (citation and internal quotation marks omitted). "Merely mentioning a document in the complaint will not satisfy this standard; indeed, even offering 'limited quotation[s]' from the document is not enough." *Id.* (quoting *Global Network*, 458 F.3d at 156). "'In most instances where this exception is recognized, the incorporated material is a contract or other legal document containing obligations upon which the plaintiff's complaint stands or falls, but which for some reason -- usually because the document, read in its entirety, would undermine the legitimacy of the plaintiff's claim -- was not attached to the complaint." *Id. (quoting Global Network*, 458 F.3d at 157)).

## B. Motion to Dismiss

### 1. Plaintiff's Amended Complaint

Defendant argues that Plaintiff's Amended Complaint is "without legal effect" because it was filed without the opposing party's written consent or leave of court. Def. Mem. at 5-6. While the filing of an amended complaint without consent or leave of the court may be treated as a nullity, where, as here, a *pro se* Plaintiff files an amended complaint in response to a motion to dismiss the Court may consider the amended complaint. *See, e.g., Pflaum v. Town of Stuyvesant*, 937 F. Supp. 2d 289, 300 (N.D.N.Y. 2013) (pro se plaintiff's papers in response to defendant's motion to dismiss may be considered as effectively amending allegations of complaint).

Accordingly, the Amended Complaint, ECF No. 19, shall be considered the operative pleading for the purposes of Defendant's motion to dismiss.

### 2. Exhaustion of Remedies

Defendant argues that Plaintiff's claim for race and color discrimination under Title VII must be dismissed because Plaintiff has failed to exhaust his administrative remedies prior to filing this claim. Def. Mem. at 11. In the Amended Complaint, Plaintiff claims he was discriminated against on the basis of his age, disability, race and color.[3] ECF No. 19, p. 4. In his charge filed before the EEOC, Plaintiff complained he was discriminated against on the basis of age and disability. Spina Dec., Ex. B, p. 3.

"As a precondition to filing a Title VII claim in federal court, a plaintiff must first pursue available administrative remedies and file a timely complaint with the EEOC." *Deravin v. Kerik*, 335 F.3d 195, 200 (2d Cir. 2003). Exhaustion is "an essential element of Title VII's statutory scheme." *Francis v. City of New York*, 235 F.3d 763, 768 (2d Cir. 2000) (quoting *Butts v. City of New York Dep't of Hous. Pres. & Dev.,* 990 F.2d 1397, 1401 (2d Cir. 1993)); *see Coleman v. Board of Educ., et al.,* No. 96 V 4293, 2002 U.S. Dist. LEXIS 619, at *9 (S.D.N.Y. Jan. 15, 2002) ("[t]here are two prerequisites for filing a Title VII action in federal court; plaintiff must (1) file a timely charge of employment discrimination with the EEOC and (2) receive a notice of the right-to-sue letter"). "[T]he burden of pleading and proving Title VII exhaustion lies with defendants and operates as an affirmative defense." *Hardaway v. Hartford Pub. Works Dep't*, 879 F.3d 486, 491 (2d Cir. 2018).

---

[3] Nowhere in the Amended Complaint does Plaintiff mention his race or color or the race or color of any of his superiors or co-workers.

9

To demonstrate Plaintiff has failed to exhaust his administrative remedies with respect to his claim of race and color discrimination, Defendant argues that "Plaintiff's EEOC Charge asserted claims of discrimination based on age, disability (PTSD), and retaliation for filing a grievance. Spina Dec., Ex. B, pp. 4. Plaintiff did not raise any concerns about his race and/or color."[4]  Def. Mem. at 12.  "Courts have held that a claim 'based on a wholly different type of discrimination' than that asserted in the EEOC charge—for example, a claim based on national origin discrimination where the EEOC charge alleged only racial discrimination—will not be permitted." *Senno v. Elmsford Union Free Sch. Dist.*, 812 F. Supp. 2d 454, 469 (S.D.N.Y. 2011) (citing *Solomon-Lufti v. Roberson*, No. 97 Civ. 6024, 1999 U.S. Dist. LEXIS 11535, 1999 WL 553733, at *4 (S.D.N.Y. July 29, 1999)).  "Generally, courts dismiss claims that are so qualitatively different from the allegations contained in an EEOC charge that an investigation would not likely encompass the new allegations." *Id.* (citing *Mathirampuzha, v. Potter*, 548 F.3d 70, 74-78 (2d Cir. 2008)).  The inquiry under this prong has been described as a "fact-intensive analysis," with a "focus . . . on the factual allegations made in the EEO[C] charge itself, describing the discriminatory conduct about which a plaintiff is grieving." *Mathirampuzha,* 548 F.3d at 76 (citation omitted). "The central question is whether the complaint filed with the EEOC gave that agency adequate notice to investigate discrimination on both bases." *Williams v. New*

---

[4] "In employment discrimination actions, the court can generally consider the contents of the plaintiff's EEOC charge, because it is integral to . . . the complaint." *Nelson v. Argyropoulous*, No. 18 Civ. 11413 (AT), 2020 U.S. Dist. LEXIS 47140, 2020 WL 1244295, at *2 (S.D.N.Y. Mar. 16, 2020) (citing *Buczakowski v. 1199SEIU*, No. 18 Civ. 0812, 2019 U.S. Dist. LEXIS 190510, 2019 WL 5697899, at *5 (N.D.N.Y. Nov. 4, 2019) ("It is appropriate to consider the EEOC Charge on a motion to dismiss because it is a public record and Plaintiff relied on it in her Complaint by attaching her right-to-sue letter.")); *see also Collins v. City of New York,* 156 F. Supp. 3d 448, 456 n.4 (S.D.N.Y. 2016) ("Collins' complaint explicitly referenced the EEOC charge and the EEOC charge is integral to the Complaint because it is a prerequisite to the ADEA cause of action. Collins had actual notice of the contents of the EEOC charge because she wrote it. Accordingly, the Court may—and will—consider the EEOC charge in deciding Defendants' motion to dismiss").

*York City Hous. Auth.*, 458 F.3d 67, 70 (2d Cir. 2006) (per curiam) (citations and quotation marks omitted); *see also Walsh v. Nat'l Westminster Bancorp., Inc.*, 921 F. Supp. 168, 172 (S.D.N.Y. 1995) (holding that "the relevant inquiry" is not the plaintiff's "intent or her understanding of the effect of her complaint on a later lawsuit," but rather "whether the EEOC could reasonably be expected to investigate the sexual harassment claims based on the allegations contained in the charge").

Here, Plaintiff stated that he was discriminated against upon the basis of his age and disability.  Spina Dec., Ex. B, p. 3.  In the description that follows there is no mention of any discrimination based upon race or color and therefore the EEOC would not have been on notice to investigate a claim of discrimination on the basis of race or color.  Thus, Plaintiff has failed to exhaust his administrative remedies with respect to any claim of race or color discrimination. *See Rojas v. Hum. Res. Admin.,* No. 18-CV-6852(KAM)(LB), 2022 U.S. Dist. LEXIS 155021, 2022 WL 3716851, at *7-8 (E.D.N.Y. Aug. 29, 2022), aff'd, No. 22-2055-CV, 2023 U.S. App. LEXIS 25975, 2023 WL 6380820 (2d Cir. Oct. 2, 2023) (dismissing claiming for race, color, sex/gender and disability discrimination where "Plaintiff checked only the 'national origin' and 'age' boxes in his EEOC Charge as the bases of the discrimination complained of [and] the balance of the factual allegations set forth in Plaintiff's letter . . . asserts that due to his age and national origin" he was discriminated against); *O'Quinn v. City of New York,* No. 19-cv-9663(LTS), 2021 U.S. Dist. LEXIS 184572, 2021 WL 4429787, at *6 (S.D.N.Y. Sept. 27, 2021) ("Because Plaintiff did not raise the disability discrimination he alleges to have suffered in his EEOC Charge—and because that discrimination could not reasonably have been expected to fall within the scope of the EEOC investigation growing out of the charge [of race discrimination] that was made—Plaintiff's ADA claims are unexhausted and must be dismissed.") (internal

11

quotation marks and citation omitted); *Pinkard v. N.Y.C. Dep't of Educ.*, No. 11-cv-5540(FM), 2012 U.S. Dist. LEXIS 64207, 2012 WL 1592520, at *8 (S.D.N.Y. May 2, 2012) ("Courts have consistently held that discrimination claims based on age, sex, or disability are not reasonably related to claims based on race or color, and vice versa.").  Accordingly, the undersigned recommends that Plaintiff's claim for race and color discrimination be dismissed.

Additionally, Defendant argues that "since Plaintiff's employment was terminated in February 2022. . ., the 300-day deadline for him to file a Charge of Discrimination regarding potential claims of race or color discrimination has long passed" and therefore this claim should be dismissed with prejudice.  Generally, "[b]ecause a failure to exhaust can be remedied through the pursuit of administrative process, a dismissal for failure to exhaust available administrative remedies should be 'without prejudice.'" *Holt v. Town of Stonington*, 765 F.3d 127, 133 (2d Cir. 2014) (quoting *Standard Inv. Chartered, Inc. v. Nat'l Ass'n of Sec. Dealers, Inc*., 560 F.3d 118, 124 (2d Cir.2009)).  Dismissal with prejudice is only appropriate where further attempts to amend the complaint would be futile.  *See, e.g., Massey v. Michele*, No. 20-CV-7621 (AT) (JLC), 2022 U.S. Dist. LEXIS 85724, 2022 WL 1493269, at *5 (S.D.N.Y. May 11, 2022) ("'where exhaustion was required but administrative remedies have become unavailable after the prisoner had ample opportunity to use them and no special circumstances justified failure to exhaust' - dismissal with prejudice is required") (quoting *Berry v. Kerik*, 366 F.3d 85, 88 (2d Cir. 2004)); *LaFargue v. River Café Co*., No. 19-CV-8814 (KPF), 2015 U.S. Dist. LEXIS 40417, at *5-6, 2015 WL 1469544, at *3 (E.D.N.Y. Mar. 30, 2015) (dismissing with prejudice plaintiff's Title VII claims based on race, national origin, and color because they were not reasonably related to the allegations in his timely EEOC Charge and the lawsuit was filed more than 300 days after the alleged adverse action).  Here, more than 300 days passed between when the

12

Plaintiff was terminated – February 2022 – and the filing of this action – April 2023 and therefore Plaintiff cannot cure this defect. Accordingly, the undersigned respectfully recommends that Defendant's motion to dismiss with prejudice Plaintiff's race and color discrimination claim be granted.

### 3. Failure to State a Claim
#### a. Discrimination

In addition to his claims for race and color discrimination, which as discussed above should be dismissed, Plaintiff asserts claims for disability and age discrimination. ECF No. 19, p. 4. To state a claim for employment discrimination based upon disability or age discrimination, Plaintiff must allege: (1) he was a member of a protected class; (2) he was qualified for the position; (3) he suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances that support an inference of discrimination. *See Farias v. Instructional Sys., Inc.*, 259 F.3d 91, 98 (2d Cir. 2001). For both of Plaintiff's remaining discrimination claims, Plaintiff must provide "at least minimal support for the proposition that [Defendant] was motivated by discriminatory intent." *Littlejohn v. City of N.Y.*, 795 F.3d 297, 311 (2d Cir. 2015); *see also Vlad-Berindan v. MTA N.Y.C. Transit,* No. 14-cv-675 (RJS), 2014 U.S. Dist. LEXIS 170985, 2014 WL 6982929, at *10 (S.D.N.Y. Dec. 10, 2014) (while plaintiff need not make out a prima facie case at this stage, the "prima facie elements 'provide an outline of what is necessary to render a plaintiff's employment discrimination claims for relief plausible') (quoting *Idlisan v. New York City Health & Hosps. Corp.*, No. 12-CV-9163 (PAE), 2013 U.S. Dist. LEXIS 163151, 2013 WL 6049076, at *4 (S.D.N.Y. Nov. 15, 2013)).

Further, both the ADA and the ADEA "'require a plaintiff alleging a claim of employment discrimination to prove that discrimination was the but-for cause of any adverse employment action.'" *Gentile v. Touro L. Ctr.*, 21-CV-1345 (JS)(ARL), 2024 U.S. Dist. LEXIS

13

49687, 2024 WL 1199512 (E.D.N.Y. Mar. 20, 2024) (quoting *Natofsky v. City of N.Y.*, 921 F.3d 337, 348 (2d Cir. 2019)).  Put differently, Plaintiff must plausibly allege that age or disability "was the 'but-for' cause of the challenged action," i.e., "that the adverse employment action would not have occurred without it." *Lebowitz v. N.Y.C. Dep't of Educ.,* 407 F. Supp. 3d 158, 172-73 (E.D.N.Y. 2017) (citations omitted); *see also Lively v. WAFRA Inv. Advisory Grp., Inc.*, 6 F.4th 293, 303 (2d Cir. 2021) ("The Supreme Court has clarified recently that the but-for causation standard for discrimination claims applies not only at trial but at the pleading stage as well.") (citing *Comcast Corp. Nat'l Ass'n of Afr. Am.-Owned Media*, 589 U.S. 327 (2020)); *Mitchell v. N.Y.C. Dep't of Educ.*, No. 20-CV-1555, 2021 U.S. Dist. LEXIS 89184, 2021 WL 8013770, at *7 (S.D.N.Y. May 7, 2021), report & recommendation adopted, 2022 U.S. Dist. LEXIS 37903, 2022 WL 621956 (E.D.N.Y. Mar. 3, 2022) ("'[t]he plaintiff must show not only that the defendant discriminated on the basis of age, but also that age discrimination was the "but-for" cause of the adverse action, and not merely one of the motivating factors.'") (quoting *Dabney v. Christmas Tree Shops*, 958 F. Supp. 2d 439, 451 (S.D.N.Y. 2013)).

At the pleading stage, Plaintiff may establish but-for causation either "by alleging facts that directly show discrimination or facts that indirectly show discrimination by giving rise to a plausible inference of discrimination." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 87 (2d Cir. 2015) (citing *Littlejohn,* 795 F.3d at 310).  "Naked assertions of [] discrimination . . . without any specific allegation of a causal link between the [d]efendants' conduct and the [p]laintiff's [membership in a protected class], [are] too conclusory to withstand a motion to dismiss."  *Gaddy v. Waterfront Comm'n*, No. 13-cv-3322 (AT) (HBP), 2014 U.S. Dist. LEXIS 139007, 2014 WL 4739890, at *5 (S.D.N.Y. Sept. 19, 2014) (internal quotation marks and citations omitted); *see Jackson v. Cnty. of Rockland*, 450 F. App'x 15, 19 (2d Cir. 2011) ("[B]ald

14

assertions of discrimination . . . unsupported by any comments, actions, or examples . . . from which we could infer that the defendants possessed a discriminatory . . . motive are . . . insufficient to survive a motion to dismiss").

To infer discriminatory intent at the motion to dismiss stage, "the question is not whether a plaintiff is likely to prevail, but whether the well-pleaded factual allegations plausibly give rise to an inference of unlawful discrimination, i.e., whether plaintiffs allege enough to 'nudge[] their claims across the line from conceivable to plausible.'" *Vega*, 801 F.3d at 87 (quoting *Twombly*, 550 U.S. at 570); *Littlejohn,* 795 F.3d at 311 (plaintiff must have "at least minimal support for the proposition that the employer was motivated by discriminatory intent"). "A plaintiff may demonstrate circumstances giving rise to an inference of discrimination through evidence of overt discriminatory conduct or disparate treatment." *Santiago v. 1199 SEIU,* No. 18-CV-06711 AMD RLM, 2020 U.S. Dist. LEXIS 134128, 2020 WL 4350048, at *4 (E.D.N.Y. July 29, 2020) (quotation omitted).

### i. Disability Discrimination under the ADA

Plaintiff claims he was discriminated against on the basis of his disability – PTSD – in violation of the ADA. To state a claim for disability discrimination, a plaintiff employee must show that "(a) his employer is subject to the ADA; (b) he suffered from, or was regarded as suffering from, a disability within the meaning of the ADA; (c) he could perform the essential functions of his job with or without reasonable accommodation; and (d) he suffered an adverse employment action because of his actual or perceived disability." *Capobianco v. City of N.Y.*, 422 F.3d 47, 56 (2d Cir. 2005). As discussed above, to succeed at the pleading stage in an ADA claim, "a plaintiff must plausibly allege that (1) her employer took an adverse action against her, and (2) the disability or perceived disability was a 'motivating factor' in the decision." *Miller v.*

*N.Y.C. Dep't of Educ.*, 2016 U.S. Dist. LEXIS 141430, 2016 WL 5947272, at *1-3 (E.D.N.Y. Oct. 12, 2016) (citing *Vega,* 801 F.3d at 84-87).

First, Plaintiff's allegations that he was improperly cited for being late or absent and his complaints regarding Civil Service classifications, use of photocopy cards, a discrepancy in a subsequent hire's published pay rate, and administrative Board meeting discussions all fail to support an inference of discrimination. Plaintiff's disagreement with Defendant's evaluation of Plaintiff's ability to perform the work expected of him does not create an inference of discrimination. *See, e.g., Flanagan v. Girl Scouts of Suffolk Cnty., Inc.,* No. 21-cv-7513, 2023 U.S. Dist. LEXIS 150418, at *33, 2023 WL 6594885 (E.D.N.Y. Aug. 25, 2023) (statements that employee was incompetent and expendable do not support an inference of discrimination); *Yeger v. Inst. of Culinary Educ., Inc.*, No. 14-CV-8202, 2017 U.S. Dist. LEXIS 10753, 2017 WL 377936, at *11 (S.D.N.Y. Jan. 25, 2017) ("[A]n employee's general disagreement with a supervisor's evaluation of the employee's job performance, by itself, does not create an inference of discrimination or constitute proof of pretext."); *Cruse v. G & J USA Publ'g*, 96 F. Supp. 2d 320, 330 n.9 (S.D.N.Y. 2000) ("An employee's opinion that a performance review was unfair supported by only h[is] own conclusory statements to that effect, cannot bootstrap h[is] claims into a Title VII claim of discrimination") (internal quotation marks omitted). Despite Plaintiff's allegations detailing his alleged mistreatment, he has not offered a single allegation supporting an inference of discrimination. "Hostility or unfairness in the workplace that is not the result of discrimination against a protected characteristic is simply not actionable." *Sethi v. Narod*, 12 F. Supp. 3d 505, 536 (E.D.N.Y. 2014) (internal quotation marks omitted); *see also Drumm v. SUNY Geneseo Coll.*, 486 Fed. Appx. 912, 914 (2d Cir. 2012) ("[P]laintiff's allegations that her supervisor 'berated' her and made other harsh comments . . . amount only to general allegations

16

of mistreatment, and do not support an inference that plaintiff had a reasonable good faith belief that she was subject to gender discrimination").  Indeed, Plaintiff's claim that Defendant "should be held accountable for their discriminatory treatment creating a hostile work environment which was detailed with the original 134 pages of the DOHR complaint. The fact alone that my co-workers had no concern over my safety while I was having the medical episode, chose not to check and see if I was okay or needed an ambulance to be called is disgusting" Am. Compl. at p. 7, illustrates Plaintiff's attempt to transform his complaints about general workplace behavior into a claim for discrimination.

Next, according to Defendant, Plaintiff's claim must be dismissed because "Plaintiff has failed to make the most basic connection between Plaintiff's purported disability and any actions by Defendant on which a viable discrimination claim could be based."  Def. Mem. at 12.  While Plaintiff alleges that Defendant discriminated against him based on a "perceived disability," he did not allege any facts to plausibly suggest that Plaintiff was fired or suffered any other adverse employment action as a consequence of that disability. [5]  Plaintiff alleges only that he overheard co-workers comparing him to "Mr. Waters who was the banned Vietnam Veteran and had 'mental issues' where he would harass the employee's and patrons" and that "[s]ome co-workers were speculating what would occur if at any moment I would take a 'Medical Leave.'" ECF No. 19-3, p.34.  However, there are no allegations connecting these comments by unidentified co-workers to his termination in February 2022.  Absent facts connecting Plaintiff's disability to his termination his claim for disability discrimination must be dismissed.  *See Lively,* 6 F.4th at 307

---

[5] Contrary to Defendant's assertion (Def. Mem. at 14), Defendant was made aware of Plaintiff's disability in December 2021, and, according to Plaintiff, that information was shared with his co-workers. ECF No. 19-2, p. 4-5, p.7, p. 13.  However, this fact alone is insufficient to suggest that Plaintiff was terminated on the basis of his disability.

("stray remarks, without more, do not constitute sufficient evidence to make out a case of employment discrimination"); *Henry v. Wyeth Pharms., Inc.*, 616 F.3d 134, 149 (2d Cir. 2010) (noting that, in determining whether a statement is probative of discrimination, a district court may consider "the context in which the remark was made (i.e., whether it was related to the decision[]making process)); *Soto v. Marist College*, No. 17-CV-7976 (KMK), 2019 U.S. Dist. LEXIS 94225, 2019 WL 2371713 (S.D.N.Y. June 5, 2019) (there were "no allegations that anyone . . . commented on [plaintiff's disability], failed to accommodate it, or otherwise demonstrated hostility toward Plaintiff due to this alleged disability," nor were there "any facts connecting the alleged disability to his termination"); *Salas v. N.Y.C. Dep't of Investigation*, 298 F. Supp. 3d 676, 687 (S.D.N.Y. 2018) (dismissing claim where plaintiff had not alleged "that her supervisors or other management . . . made any statements about . . . her disability, let alone statements indicating that [it] played a role in their decisions"); *Osby v. City of New York*, No. 13-cv-8826 (TPG), 2016 U.S. Dist. LEXIS 108034, 2016 WL 4372233, at *7 (S.D.N.Y. Aug. 15, 2016) (dismissing disability discrimination claim where "the complaint [was] bare of facts supporting any connection between [plaintiff's] disability and [the adverse employment action]").

There are simply no facts alleged supporting a connection alleged between Plaintiff's PTSD and his termination. *See Pustilnik v. Battery Park City Auth.,* No. 18-CV-9446, 2019 U.S. Dist. LEXIS 208527, 2019 WL 6498711, at *4 (S.D.N.Y. Dec. 3, 2019)( *Idlisan*, 2013 U.S. Dist. LEXIS 163151, 2013 WL 6049076, at *5 (dismissing disability discrimination claim where complaint did not plead "a plausible nexus" between the plaintiff's disability and the adverse employment action, and where the complaint merely "expresse[d] [the plaintiff's] own personal belief, in a conclusory manner, that [the employer's] decision not to hire him was based on his disability"); *Jackson v. Elmhurst Hosp. Ctr*., No. 10-CV-5248, 2012 U.S. Dist. LEXIS 34508,

2012 WL 868965, at *7 (E.D.N.Y. Mar. 14, 2012) (dismissing discrimination claims where the plaintiff "offer[ed] virtually no connection between any disability" and her leave time denial, her attempt to take a sick day, and a warning issued by her employer for inappropriate behavior). Accordingly, the undersigned respectfully recommends the Court grant Defendant's motion to dismiss Plaintiff's claim for disability discrimination.

### ii.  Age Discrimination Claim under the ADEA

Plaintiff also claims he was discriminated against on the basis of his age in violation of the ADEA.  To state a claim for age discrimination under the ADEA, a plaintiff must plausibly allege that (1) he "was within the protected age group," (2) he "was qualified for the position," (3) he "experienced [an] adverse employment action," and (4) "such action occurred under circumstances giving rise to an inference of discrimination." *Spires v. MetLife Group, Inc.,* No. 18-CV-4464 (RA), 2019 U.S. Dist. LEXIS 160181, 2019 WL 4464393, at *7 (S.D.N.Y. Sept. 18, 2019) (quoting *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 107 (2d Cir. 2010)). Although the plaintiff need not make out a prima facie case at the motion to dismiss stage, the prima facie elements nonetheless provide a "guide-post for the adjudication of a motion to dismiss." *Vlad-Berindan,* 2014 U.S. Dist. LEXIS 170985, 2014 WL 6982929, at *10 (citation omitted).

Although Plaintiff check off a laundry list of acts of "discriminatory conduct," including termination of employment and retaliation, nowhere in the Amended Complaint does Plaintiff set forth any facts which state directly or by inference that any such actions were taken by Defendant on the basis of Plaintiff's age.  Plaintiff's Amended Complaint contains one single reference to a comment relating to Plaintiff's age.  According to Plaintiff, "[c]omments were made by co-workers that since I was older, I was not up to date on the technology even though

was qualified and on titles above the IT Aide position. These titles include IT Specialist 1, 2, & 3, along with Technology Project Manager. At one point I had to explain . . . my education and work-related experience when derogatory remarks were made."  ECF 19-2, p. 46.  From this statement, Plaintiff concludes that since he was replaced by a younger employee his termination was the result of age discrimination.  Such conclusory allegations cannot establish an inference of discrimination.  *See Idlisan,* 2013 U.S. Dist. LEXIS 163151, 2013 WL 6049076, at \*5 (dismissing discrimination claim where plaintiff merely "expresses his own personal belief, in a conclusory manner, that [the adverse employment action] was based on his [protected characteristic]").  "Where there is no reason to suspect that an employer's actions had anything to do with membership in a protected class, other than [the] plaintiff's bald assertion that []he was a member of such a class, and the people who made decisions about [his] employment were not, no claim is stated." *Ochei v. The Mary Manning Walsh Nursing Home Co.*, No. 10-CV-2548, 2011 U.S. Dist. LEXIS 20542, 2011 WL 744738, at \*3 (S.D.N.Y. Mar. 1, 2011) (citing *Yusuf v. Vassar Coll.*, 35 F.3d 709, 714 (2d Cir. 1994)); *see also Boncoeur v. Haverstraw-Stony Point Cent. Sch. Dist*., No. 20-CV-10923, 2022 U.S. Dist. LEXIS 51428, 2022 WL 845770, at \*12 (S.D.N.Y. Mar. 22, 2022) ("Plaintiff therefore 'does nothing more than allege the familiar faulty syllogism: something bad happened to me at work; I am (fill in the blank with one or more protected categories); therefore, it must have happened because I am (fill in the blank with the applicable protected categor[ies])'") (quoting *House v. Wackenhut Servs., Inc.*, No. 10-CV-9476, 2012 U.S. Dist. LEXIS 130879, 2012 WL 4017334, at \* 1 (S.D.N.Y. Aug. 20, 2012)); *Irvine v. Video Monitoring Servs. of Am., L.P.*, No. 98-CV-8725, 2000 U.S. Dist. LEXIS 5461, 2000 WL 502863, at \*4 (S.D.N.Y. Apr. 27, 2000) (dismissing age discrimination claims where the plaintiff's "theory appears wholly based on a false syllogism: A) My co-workers hate me; B) I

am old; C) My co-workers hate me because I'm old") (quoting *Crawford v. Medina Gen. Hosp.*, 96 F.3d 830, 836 (6th Cir. 1996)).

Beyond Plaintiff's subjective beliefs, the record is devoid of evidence that Plaintiff was the subject of discrimination because of his age and Plaintiff relies entirely upon the fact that he was replaced by a younger employee to support his claim of discrimination.  In certain circumstances, the replacement of a plaintiff by a significantly younger employee may support an inference of discrimination. *See, e.g., Ndremizara v. Swiss Re Am. Holding Corp.*, 93 F. Supp. 3d 301, 311 (S.D.N.Y. 2015) ("an inference of age discrimination may be raised where a plaintiff 'alleges that [he or] she was within the protected class, that [he or] she was rejected for a position, and that the position was filled by a person significantly younger than [him or] her'") (quoting *Munoz-Nagel v. Guess, Inc*., No. 12-CV-1312, 2013 U.S. Dist. LEXIS 61710, 2013 WL 1809772, at *7 (S.D.N.Y. Apr. 30, 2013)); *Sandvik v. Sears Holding/Sears Home Improvement Prods., Inc.,* No. 12-CV-2096 JFB GRB, 2014 U.S. Dist. LEXIS 231, 2014 WL 24225, at *15 (E.D.N.Y. Jan. 2, 2014) (replacement by younger employee supports inference of discrimination); *Del Valle v. City of New York,* No. 11 CIV. 8148 DLC, 2013 U.S. Dist. LEXIS 16278, 2013 WL 444763, at *4 (S.D.N.Y. Feb. 6, 2013) (observing that "where the plaintiff challenges his removal from his position, the fact that he is replaced by someone who is significantly younger may raise an inference of age discrimination"); *but see Spires,* 2019 U.S. Dist. LEXIS 160181, 2019 WL 4464393, at *7 (allegation that plaintiff was replaced by someone "substantially younger" and less qualified is insufficient to raise an inference of age discrimination); *Liburd v. Bronx Lebanon Hosp. Ctr.,* No. 07-Civ. 11316 (HB), 2008 U.S. Dist. LEXIS 62867, 2008 WL 3861352, at *2, 6 (S.D.N.Y. Aug. 19, 2008) (Plaintiff's claims that she was replaced by a "younger, less experienced" employee, "without more, is not enough to

survive a motion to dismiss" under the ADEA).  However, here, Plaintiff has not provided

Grant's age or otherwise alleged any facts that would allow a court to reasonably infer that Grant

was "significantly younger" than Plaintiff.  *O'Connor v. Consol. Coin Caterers Corp*., 517 U.S.

308, 313, 116 S. Ct. 1307, 134 L. Ed. 2d 433 (1996).  Without details as to the circumstances of

promoting or hiring Grant or a showing of how Grant was similarly situated to Plaintiff, the mere

fact that Defendant hired Grant as Plaintiff's replacement is not enough to infer discrimination.

In addition, the fact that Plaintiff was fifty years old when hired substantially weakens

any inference of discrimination.  Numerous courts have concluded that a Plaintiff's age

discrimination claim is undermined where Plaintiff was already a member of the protected age

class when Defendants hired him. *See, e.g., Stanojev v. Ebasco Servs., Inc*., 643 F.2d 914, 921

(2d Cir. 1981) (finding no direct evidence of age discrimination when Plaintiff "was taken into

the company at the executive level when he was already 11 years into the [protected] age

bracket"); *Klein v. Brookhaven Health Care Facility,* No. CV 17-4841 (JS)(ARL), 2023 U.S.

Dist. LEXIS 127349 (E.D.N.Y. July 20, 2023)(recommending grant of summary judgment with

respect to Plaintiff's ADEA claim, where, *inter alia*, Plaintiff was within the protected class

when hired); *Soto*, 2019 U.S. Dist. LEXIS 94225, 2019 WL 2371713, at *14 ("Indeed, Plaintiff .

. . was already a member of the age group protected by the ADEA when he was hired, further

undermining any possible inference of age discrimination relating to his termination."); *Spires,*

2019 U.S. Dist. LEXIS 160181, 2019 WL 4464393, at *8 ("Although the ADEA does not

necessarily foreclose an age-discrimination claim when a plaintiff was over forty years old when

first hired, this substantially weakens any inference of discrimination on Defendants' part");

*Snowden v. Trs. of Columbia Univ*., 12 Civ. 3095 (GBD), 2014 U.S. Dist. LEXIS 42543, 2014

WL 1274514, at *8 (S.D.N.Y. Mar. 26, 2014), aff'd, 612 F. App'x 7 (2d Cir. 2015) ("Where, as

here, an employee is already a member of the protected class when hired, any inference of age discrimination when her employment is terminated is undermined").  Accordingly, the undersigned respectfully recommends that Defendant's motion to dismiss Plaintiff's claim of age discrimination be granted.

### b. Hostile Work Environment

Turning next to Plaintiff's claim of hostile work environment, the facts alleged in the Amended Complaint are also insufficient to support a hostile work environment claim. To state a claim for a hostile work environment, a plaintiff must plead facts that would tend to show that the complained of conduct: (1) "is objectively severe or pervasive—that is, ... creates an environment that a reasonable person would find hostile or abusive;" (2) creates an environment "that the plaintiff subjectively perceives as hostile or abusive;" and (3) "creates such an environment because of the plaintiff's [protected characteristics]."  *Patane v. Clark*, 508 F.3d 106, 113 (2d Cir. 2007).  According to Defendant, Plaintiff's hostile work environment claim must be dismissed because Plaintiff has failed to allege "any discriminatory remarks, offensive conduct, or other untoward behavior which could possibly give rise to a harassment claim based on his age, disability, race and or/color."  Def. Mem. at 19.  The Court agrees.  As discussed above Plaintiff has failed to allege facts evidencing any discriminatory conduct, let alone such pervasive discriminatory comments to create a hostile work environment.  Accordingly, the undersigned respectfully recommends Plaintiff's claim for hostile work environment be dismissed.

### c. Retaliation

"To state a claim for ADA retaliation, 'a plaintiff must allege that: '(1)[ ]he engaged in an activity protected by the ADA; (2) the employer was aware of this activity; (3) the employer

23

took an adverse employment action against [him]; and (4) a causal connection exists between the alleged adverse action and the protected activity.'" *Robles v. Medisys Health Network, Inc.*, No. 19 CV 6651 ARR RML, 2020 U.S. Dist. LEXIS 109115, 2020 WL 3403191, at *19 (E.D.N.Y. June 19, 2020).  Moreover, to plead the fourth element, that being, causation, a plaintiff must allege "that his protected activity was the but-for cause of the adverse employment action." *Ninying v. N.Y.C. Fire Dep't*, 807 F. App'x 112, 115 (2d Cir. 2020).  "These statutes prohibit retaliation against any employee who makes a complaint against her employer regarding any practice made unlawful by these statutes." *Ruhling v. Tribune Co.*, 2007 U.S. Dist. LEXIS 116. Where the plaintiff fails to plead a direct link between a grievance and retaliatory action, the plaintiff can demonstrate a causal connection "indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct." *Littlejohn*, 795 F.3d at 319.  Here, Plaintiff has failed to allege he made any grievance relating to unlawful discriminatory practices prior to his termination.  Plaintiff alleges only that filed a grievance with his union, without identifying any complaints of unlawful conduct based on age or disability. This is not enough.  *See, e.g. Rolle v. Educ. Bus. Transp., Inc.*, No. 11-CV-3855 (SJF) (AKT), 2013 U.S. Dist. LEXIS 37973, at *43, 2013 WL 783026, at *14 (E.D.N.Y. Feb. 12, 2013) ("Complaints of harassment unrelated to the plaintiff's membership in a protected category are not protected activity" under the ADEA or Title VII); *Marshall v. National Assoc. of Letter Carriers Br. 36*, No. 00-CV-3167 (LTS), No. 01-CV-3086 (LTS), 2003 U.S. Dist. LEXIS 1427, at *27, 2003 WL 223563, at *9 (S.D.N.Y. Feb. 3, 2003) (dismissing retaliation claim because "Plaintiff does not assert any prior Equal Employment Opportunity-type protected activity, but simply asserts claims related to prior grievances that Plaintiff had filed with his union.").

24

Therefore, the undersigned respectfully recommends that Plaintiff's claim for retaliation be dismissed.

### 4. The Amended Complaint Should be Dismissed Without Prejudice

Defendant argues that Plaintiff's Complaint should be dismissed with prejudice. Def. Mem. at 6. Generally, "[p]ro se plaintiffs are allowed an opportunity to amend their complaint before the Court will dismiss it with prejudice." *Delorenzo v. Schiff,* No. 20-CV-7935 (NSR), 2022 U.S. Dist. LEXIS 54391, 2022 WL 889241, at *5 (S.D.N.Y. Mar. 25, 2022) (citing *Owens v. N.Y.C. Dep't of Sanitation*, No. 11-CV-8297 (ALC), 2013 U.S. Dist. LEXIS 7294, 2013 WL 150245, at *3 (S.D.N.Y. Jan. 15, 2013)); *see also Breer v. Maranville*, No. 2:12-CV-53, 2012 U.S. Dist. LEXIS 179518, 2012 WL 6597707, at *3 (D. Vt. Nov. 27, 2012) ("The Second Circuit has cautioned that district courts should not dismiss pro se complaints with prejudice without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated.") (internal quotations omitted). Here, although Plaintiff has already filed an amended complaint in response to Defendant's first motion to dismiss and has failed to respond at all to Defendant's second motion to dismiss the undersigned respectfully recommends that Plaintiff be afford one final opportunity to replead his claims. *See, e.g., Jahad v. Holder*, No. 19-CV-4066 (NSR), 2023 U.S. Dist. LEXIS 23186, 2023 WL 1879526 (S.D.N.Y. Feb. 10, 2023); *Brown v. Griffin*, No. 19-CV-02296, 2022 U.S. Dist. LEXIS 45096, 2022 WL 767086 (S.D.N.Y. Mar. 14, 2022).

## OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72 of the Federal Rules of Civil Procedure, any objections to this Report and Recommendation must be filed with the Clerk of the Court within 14 days, except in the case of a party proceeding *pro se. Pro se* Plaintiff Jeff

Roth must file his objections in writing with the Clerk of the Court within the prescribed time period noted above. Any requests for an extension of time for filing objections must be directed to Judge Kovner prior to the expiration of the 14-day period for filing objections.  Failure to file objections within this period waives the right to appeal the District Court's Order.  *See* 28 U.S.C. § 636(b)(1); Fed R. Civ. P 72; *Mejia v. Roma Cleaning, Inc*., No. 17-3446, 2018 U.S. App. LEXIS 28235, 2018 WL 4847199, at *1 (2d Cir. Oct. 5, 2018) ("Plaintiff has waived any objections to the Magistrate's finding" by failing to timely object); *Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.,* 596 F.3d 84, 92 (2d Cir. 2010); *Beverly v. Walker,* 118 F.3d 900, 902 (2d Cir. 1997).

Counsel for Defendant is directed to serve a copy of this Order upon pro se Plaintiff forthwith and file proof of service on ECF.

Dated: Central Islip, New York
       July 25, 2024

_____/s/_____

ARLENE R. LINDSAY
United States Magistrate Judge

27